## CAPPELEN v. UNITED STATES.

### No. 3071.

United States District Court
District of Columbia.
March 2, 1949.

Bruce S. Quigley, of Washington, D. C., for libelant.

Onan A. Hydrick, of Washington, D. C., for respondent.

BEN MOORE, District Judge.

This is a libel in personam brought under the provisions of the statute permitting suits against the United States on a Second Seaman's War Risk Policy. U.S.C.A. Title 46, § 1128d. The complaint, filed on June 7, 1946, alleges that the insured, Jens M. Cappelen, died on or about June 8, 1943, as a result of a bullet wound in a theater of war aboard the S. S. William B. Giles; that the death was within the terms of the policy; that the insurance benefits amounting to $5,000 have not been paid; that insured was Master of a vessel operated on behalf of the United States by the War Shipping Administration; that libelant was the designated beneficiary; and that claim had been made for the amount of the policy, which was disallowed on March 25, 1946.

Respondent, on August 21, 1946, filed a plea denominated "Special Plea of Respondent to the Jurisdiction of the Court," setting up the two year statute of limitations applicable to actions brought under this statute. U.S.C.A. Title 46, Sect. 745. The libelant answered this special plea, denying "receipt of information as to the circumstances of death of the insured prior to the year of 1946 sufficient for libelant to prosecute to a successful conclusion," and alleging that the cause of action did not arise until the year 1946. On October 29, 1946, one of the judges of this court entered an order in the case which stated that "said special plea of Respondent to the jurisdiction of the Court be, and the same hereby is, stricken and dismissed." On November 13, 1946, respondent answered, again setting up the defense of the

statute of limitations, and further defending on the ground that the death of the insured was not proximately caused by any of the risks and perils insured against by the policy.

It does not appear from the record whether the judge who dismissed the special plea of the statute of limitations did so because the defense was improperly asserted by special plea to the jurisdiction rather than by answer, or whether he considered the merits of the defense and concluded that the action was not, under the circumstances of the case, barred by the statute of limitations. In this situation, and in view of my conclusion that libelant's action must be dismissed on the merits, I do not consider it proper for me, as an assigned judge sitting at the trial, to consider or pass upon the defense of the statute of limitations.

Insured was a sixty-two year old sea captain, who, after having returned from a long and dangerous voyage of some 36,000 miles under war conditions, covering a period of seven months, was again ordered to sea as Master of the S. S. William B. Giles. He was happily married, was on the most affectionate terms with his wife and daughter, and prior to his last voyage had made plans for a pleasure trip with them to New Orleans upon his return from what he expected to be a comparatively short period of time at sea. He was ordered to proceed with his vessel to the port of Casablanca, on the northern coast of Africa. The ship lay at anchor for several days. Within a day or so after its arrival insured became ill from a complaint resembling dysentery, probably caused from eating contaminated food. After the onset of this illness he remained in his cabin, and during that time the steward observed several cognac and brandy bottles in his cabin, and that he was in an intoxicated condition. On the evening of June 7 he ate a light meal consisting of a poached egg, a cup of tea and orange juice. On the following morning, after five o'clock, the steward entered the Captain's cabin and found him in his bunk in a semi-sitting position, clad only in a pajama coat, leaning against the bulkhead, his legs hanging over the side of the bunk.

There was a bullet wound in the region of his right eye. A .38 caliber Smith and Wesson revolver, issued by the Navy Department, was lying between his legs, with the butt pointed upward. It was afterwards ascertained that no fingerprints other than insured's were on the revolver. After the body was removed, a spent bullet was found in the rug. No note or other writing was found. A doctor who was summoned pronounced insured dead, and an autopsy which was made on the same day disclosed that death was to due to excessive bleeding, flooding of the respiratory tract and the lungs, and shock.

Under the circumstances as detailed above, it must be concluded that insured's death resulted in one of two ways: either he killed himself intentionally, or was accidentally killed while handling the Smith and Wesson revolver.

I find by a preponderance of the evidence that the death of the insured was due to accident rather than suicide. There was no motive for suicide, but on the contrary, every reason to believe that insured had a happy and normal outlook on life, a great love for his family, and plans for future pleasurable activities. True, the circumstances show that he was killed by a weapon in his own hand, and also that he was ill and either intoxicated or recovering from the effects of intoxication at the time; but all the facts are as consistent with the theory of accidental death as with suicide. It does not seem likely that one who is intent on suicide should shoot himself through the eye, rather than directing the bullet to the temple or the heart. It is entirely probable that while lying in his bunk he may have reached for the loaded revolver, and in his weakened and abnormal condition, accidentally discharged it. He was not instantly killed, so he may have struggled from some other position to that in which he was found. In view of the recognized presumption against suicide, and there being no compelling facts or circumstances which should force the Court to conclude that the death was suicide, I am of opinion that the evidence amply supports the finding of accidental death.

380

The pertinent provisions of the insurance policy sued on, with reference to the risks and perils covered, are as follows:

"Article 3. Risks and perils. The insurance is for loss of life, disability (including dismemberment and loss of function), loss of or damage to personal effects, and detention (including the occurrence of other situations hereinafter provided) of the insured, directly and proximately caused by risks of war and warlike operations, including capture, seizure, destruction by men-of-war, sabotage, piracy, takings at sea, arrests, restraints and detainments, acts of kings, princes and peoples in the prosecution of hostilities or in the application of sanctions under international agreements, whether before or after declaration of war and whether by a belligerent or otherwise * * *

"The fact that a vessel, or any vessel with which such vessel is in collision, is carrying troops or military or other supplies, or is proceeding to or from a war base, or is manned or operated by military or naval personnel, shall not alone be sufficient to include in this policy any claim which is not included by the foregoing terms of this article."

An amendment to Article III announced by the Maritime War Emergency Board on April 24, 1943, extends the coverage of the policy as follows:

"The insurance is also for loss of life, disability (including dismemberment and loss of function), loss of or damage to personal effects, and detention (including the occurrence of other situations hereinafter provided) of the insured, directly and proximately resulting from stranding, sinking, or break-up of the vessel, explosion or fire causing loss of or substantial damage to the vessel, or collision by the vessel or contact with any external substance (including ice, but excluding water), irrespective of whether the same are caused by risks of war or warlike operations or by marine risks and perils."

It will be noted that the amendment goes no further than to include marine risks and perils which had theretofore not been covered by the policy.

If libelant is to recover in this action, the basis of the recovery must be that his death was caused directly and proximately by risks of war or warlike operations, or by marine risks or perils. Accidental death might or might not be covered, depending on the nature of the accident. An accident caused by blackout conditions imposed to guard vessels from enemy observation is covered. Quinn v. United States, D.C. Hawaii, 72 F.Supp. 94. Accidental death as a result of a brawl among other members of the crew is not covered. Reinold v. United States, 2 Cir., 167 F.2d 556.

The accident which caused insured's death might have occurred at any time and in any place. The mere facts that it occurred on shipboard during insured's service in a theater of war, and that the weapon was one which had been issued to him to be carried in line of duty, were not sufficient to enable the Court to say that the accident was directly and proximately caused by risks of war or warlike operations, or by a marine risk or peril. Whatever causal connection there may have been, it was so remote that it could not give rise to a cause of action on the policy.

For the foregoing reasons I am of opinion that libelant has not established a case of coverage within the provisions of the policy sued on, and therefore the libel must be dismissed. An order may be submitted for entry in accordance with the foregoing opinion.